IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FERYL LYNN B.,[1]               )
                                )
            Plaintiff,          )
                                )       CIVIL ACTION
v.                              )
                                )       No. 19-1059-JWL
ANDREW M. SAUL,[2]              )
Commissioner of Social Security,)
                                )
            Defendant.          )
_____)

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

I. Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff filed an application for DIB on February 1, 2016 alleging disability beginning August 30, 2014. (R. 12, 194-95). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (Doc.1). Plaintiff argues that remand is necessary because the ALJ erred when he "failed to give good reasons to discredit [Plaintiff's] allegations concerning the frequency and intensity of [her] migraines." (Pl. Br. 9).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

3

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Discussion

Plaintiff notes she testified that she cannot be exposed to fluorescent lighting and that she would miss more than one to two days of work each month due to migraine headaches and the vocational expert (VE) testified that an individual with such limitations could not perform competitive work. She argues the ALJ did not provide good reasons to discount her allegations, and remand is necessary. She argues Social Security Ruling (SSR) 16-3p prohibits an ALJ's conclusory statement that he considered a claimant's allegations of symptoms, but requires that he explain the allegations he found consistent and those he found inconsistent with the evidence. (Pl. Br. 10).

Plaintiff agues her allegations should be credited because medical records support her allegations (Pl. Br. 10-11), because her description of her allegations "was consistent

4

throughout the record," id. at 11, and because she persisted in seeking treatment. Id. at 12. She argues that the reasons provided by the ALJ to discount her allegations ("a prior administrative denial for similar allegations, physical examinations were normal during the relevant period, and there was an allegation of drug-seeking behavior") "do not constitute valid reasons to discount [her] testimony." Id.

Plaintiff acknowledges that a factor-by-factor analysis is not required but argues that the ALJ's discounting her allegations because of "unremarkable objective findings fails for the same reasons outlined in Pennington [v. Chater, 113 F.3d 1246, (10th Cir. 1997) (unpublished table decision, available at 1997 WL 297684)]." Id. at 13. She argues that the ALJ's reliance on an allegation of failing a drug screen is error because the failure to test positive for prescribed pain-relieving drugs is insufficient to "diminish the volumes of other records that show [Plaintiff] had uncontrolled migraines." Id. Finally, Plaintiff argues the ALJ's reliance on a prior administrative denial is error because she has a right to de novo review of this application. Id. at 14.

The Commissioner argues that the decision below is supported by the record evidence. (Comm'r Br. 6-11). He notes several of the reasons the ALJ provided and cites to specific evidence supporting those findings. Id. at 7-8. He points out that Plaintiff's arguments largely focus on evidence that could have been accorded greater weight, but argues that the evidence supports the ALJ's interpretation and in such a case the ALJ's interpretation must be accepted. Id. at 8 (citing Lax, 489 F.3d at 1084). Finally, the Commissioner distinguishes Pennington (Comm'r Br. 9), and argues that the ALJ's reliance on the evidence of drug-seeking behavior is proper in the circumstances of

5

this case. Id. at 10-11. Although the Commissioner's Brief does not directly address Plaintiff's argument that the ALJ's reliance on a prior administrative denial is error, in a footnote he does argue, "While the prior ALJ decision is not within the scope of the Court's [sic] review here, it does provide context for the current (March 2018) decision. That is particularly so here, where the prior ALJ decision was affirmed by this Court [sic], on appeal, in December 2016." Id. at 1, n.1 (citing R. 97-110 (the court's 2016 decision)).

In her Reply Brief, Plaintiff once again argues, "the ALJ's reliance on [Plaintiff]'s appearance at the hearing and a single notation of drug-seeking behavior in a voluminous record do not constitute substantial evidence." (Reply 1). She quotes a portion of SSR 16-3p:

> The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.

(Reply 2) (quoting SSR 16-3p, 2016 WL 1119029 at *10 (March 16. 2016)). She then argues, "SSR 16-3p does not give the ALJ's [sic] the same latitude to rely on their observations as SSR 96-7p because the Commissioner wanted the ALJ's [sic] to focus on symptom evaluation rather than character assessments." Id. Plaintiff argues the record shows a long history of uncontrolled migraine headaches and the ALJ's reliance on normal physical exams does not outweigh that history. (Reply 2-3). She concludes by arguing, "The deference due to an ALJ's symptoms evaluation is not absolute. The Court

6

[sic] should remand the claim because the ALJ's analysis did not comply with the framework of SSR 16-3p, which focuses more on the consistency of [Plaintiff]'s allegations with the medical records and less with her character." Id. at 3.

## A. The ALJ's Evaluation of Plaintiff's Allegation of Symptoms

As noted in the court's discussion of the legal standard applicable to judicial review of a decision of the Commissioner, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395 F.3d at 1172; White, 287 F.3d at 905. The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Here, the ALJ found
>
> that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 17).

The decision contains numerous facts and inconsistencies relied upon by the ALJ to discount Plaintiff's allegations of disabling symptoms: "While this is a de novo claim, time does not suddenly cause a drastic shift in functionality the next day, and so the previous decision is given some weight as a summation of the record the day before the claimant alleged she was disabled." (R. 16). Plaintiff's "condition is generally well

7

treated," her "limitations are focused upon triggers that cause migraines for the claimant so that she avoids the behavior in the workplace that would cause her to lose functionality." Id. at 17. Fluorescent lighting at Plaintiff's former employer "is not necessarily correlated to migraine triggers in the medical record, and the claimant did not testify she avoided all light all of the time, only that when she had [a migraine headache], she wanted a dark room." Id. Plaintiff's alleged triggers of light, smell, and noise "are not medically quantified in the record, and the claimant's activities of daily living expose her to levels of light, smells, and noise, and the undersigned has addressed those triggers to a quantifiable level out of an abundance of caution." Id. Plaintiff participated in the hearing

> even though she stated she was on day 3 of a migraine. This anecdotal [sic], and is not relied upon, but is an example of the fact that the record does not show the claimant is never exposed to the world, but that she has some limitations in terms of triggers, which are supported by objective evidence.

Id. "The claimant notes she does volunteer work when she can, which again shows she is not isolated entirely." Id. Plaintiff's headaches "are not only migraine, but also rebound headaches from use of analgesics, and possible occipital neuralgia (although the latter is not substantiated)." Id. (citing R. 296). Plaintiff was alleged to have drug seeking behavior, her clinic refused to continue to prescribe narcotic pain medications but "[s]he continued, however to be seen at the clinic and reporting migraines. Thus, the claimant's migraine status seemed unchanged, and she did not require such strong pain medication to treat her symptoms." (R. 18). Plaintiff's "cognitive functioning was not impaired during visits, even when she reported migraines, and there did not appear to be any

8

functional limitations noted during visits when the claimant reported migraine headaches." Id. (citing R. 930-61). The examination of Plaintiff's neurologist, who was treating her for migraine headaches, showed her "performing with no loss of functionality." Id.

> Thus, the record shows that even when the claimant is suffering from migraine headaches, her medical examinations are within normal limits. There is little objective evidence to support much of the claimant's allegations of pain. Her use of pain pills has caused analgesic rebound headaches in the past, and apparently at one point she ceased taking them altogether (although they continue to be prescribed) as the only objective evidence of testing in the record shows no evidence that her prescriptions were in her system."

Id. The ALJ explained how he had evaluated the record evidence:

> However, there is evidence to document the claimant's history of migraine pain, and out of an abundance of caution and based on the longitudinal evidence, including the decision that was made just prior to this decision, the undersigned assigns limitations as discussed above. The undersigned notes that these findings are supported by the initial decision of the State Agency DDS by medical consultant Dr. Pravin Sampar, M.D. who noted that the claimant had no hospitalizations or emergency room visits during the period, and was not on preventative medication as of February 2016 (after the date last insured). He limited the claimant to a light exertional level, with some postural and environmental limitations, this opinion is somewhat persuasive, but the undersigned further clarifies the environmental limitations, adds safety considerations to posturals, and addresses the bright light issue. The opinion is given some weight, as it is consistent with the medical evidence and further addresses the claimant migraine issues reasonably. This opinion is also supported by the medical opinion of Dr. Jan Hunter, D.O., who opined similarly, and the undersigned weighs it accordingly.

(R. 18).

The ALJ assed Plaintiff with the RFC

to perform light work as defined in 20 CFR 404.1567(b) except she cannot climb ladders, ropes or scaffolds. She may not be exposed to workplace

9

> hazards (e.g. dangerous machinery, or unprotected heights). She can frequently climb ramps and stairs, as well as balance. The claimant can perform work in an environment with no more than moderate noise levels. She should avoid concentrated exposure to pulmonary irritants (e.g. fumes, odors, dusts, gases, and poor ventilation). The claimant may not work in an environment with bright light (defined as brighter than what would be customarily accepted in a retail or office setting indoors), with being allowed to wear darkened lenses.

(R. 16) (bolding omitted).

### B.     Analysis

Plaintiff has shown no error in the ALJ's evaluation of her allegations of symptoms. To the extent she argues the ALJ erred in applying SSR 16-3p because he erroneously relied upon Plaintiff's appearance at the hearing and erroneously assessed her character for truthfulness rather than evaluating whether her allegations of symptoms were consistent with and supported by the record evidence, her arguments misunderstand both the ALJ's evaluation and SSR 16-3p. First, as quoted above although the ALJ noted that Plaintiff participated in the hearing despite reportedly being on the third day of a migraine headache, he specifically noted that fact was not relied upon except as an example of the fact Plaintiff is sometimes in public ("exposed to the world") even when she has a migraine headache. (R. 17). Moreover, to the extent Plaintiff is able to function when she is "exposed to the world" with a migraine headache, that is record evidence which might be appropriately relied upon tending to discount a finding of disabling limitations from her migraine headaches. Second, Plaintiff misunderstands the Ruling when she argues "SSR 16-3p does not give the ALJ's [sic] the same latitude to rely on their observations as SSR 96-7p because the Commissioner wanted the ALJ's

10

[sic] to focus on symptom evaluation rather than character assessments." (Reply 2). Plaintiff is correct that ALJs are to focus on evaluation of the claimant's allegation of symptoms rather than assessment of the claimant's character for truthfulness. Nevertheless, the claimant's statements in submissions to the agency or at the ALJ hearing are a part of the record evidence which the ALJ must consider in evaluating a claimant's allegation of disabling symptoms. SSR 16-3p, 2016 WL 1119029 at *7 ("Other sources may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include public and private agencies, other practitioners, educational personnel, non-medical sources such as family and friends, and agency personnel. We will consider any statements in the record noted by agency personnel who previously interviewed the individual, whether in person or by telephone. <u>The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file</u>.") (emphasis added).

      The court's summary of the ALJ's rationale for discounting Plaintiff's allegations of disabling symptoms reveals that his analysis was far more than a conclusory statement that he had considered Plaintiff's allegations. To be sure, there is also evidence in the record which supports Plaintiff's allegations and to which the ALJ might have accorded greater weight. But, the standard for judicial review of Social Security decisions is deferential and an ALJ's credibility determinations are generally treated as binding on

11

review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). While "deference is not an absolute rule," Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993), the fact that there is evidence from which an adjudicator might have reached another decision is not sufficient reason to ignore the general rule. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff's argument regarding the ALJ's reliance on an allegation of drug-seeking misunderstands the ALJ's decision. She argues that "this single notation does not diminish the volumes of other records that show [she] had uncontrolled migraines." (Pl. Br. 13). The ALJ relied on the "drug-seeking" incident because in that incident Plaintiff's urinalysis showed the presence of no pain medication in her system. (R. 18) (citing R. 948-49 and noting this was "the only objective evidence of testing in the record [and] shows no evidence that her prescriptions were in her system."). The ALJ noted

12

Plaintiff's clinic refused to continue to prescribe narcotic pain medications but "[s]he continued, however to be seen at the clinic and reporting migraines. Thus, the claimant's migraine status seemed unchanged, and she did not require such strong pain medication to treat her symptoms." (R. 18). The import of the ALJ's finding is not that Plaintiff was merely drug seeking, but that even though she had no pain medications in her system, her functioning did not decrease. Contrary to Plaintiff's assertion, this is a strong indication that Plaintiff's migraine headaches were not uncontrolled, but that she was able to function without pain medication despite her migraine pain. A finding of "no disability" does not require that an individual be able to work pain-free, but that she be able to perform "substantial gainful activity" despite her pain. This evidence tends to support the ALJ's finding in that regard.

Plaintiff's argument that the ALJ erred in relying on the prior administrative denial fares no better. Plaintiff argues that the ALJ erred in relying on the prior administrative denial because she had a right to a <u>de novo</u> review of the application before the ALJ. Plaintiff cites no authority for her assertion of a right to a <u>de novo</u> review. While it is clear that an ALJ "will issue a decision based on the preponderance of the evidence in the hearing record," 20 C.F.R. § 404.929, and he is "not bound by any previous determination" on the application at issue (R. 29) he <u>is</u> bound by certain constraints. For example, he is bound by the principle of issue preclusion and may not decide an issue between parties or privies which was necessarily decided in a prior decision by a court of competent jurisdiction in a manner contrary to that court's decision. "'When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot

13

again be litigated between the same parties in any future lawsuit.'" United States v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). Four elements are necessary to trigger issue preclusion: "'(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.'" Botefuhr, 309 F.3d at 1282 (quoting Dodge v. Cotter Corp., 203 F.3d 1190, 1197 (10th Cir. 2000)).

The decision of the United States District Court for the District of Kansas affirming the prior administrative decision in this case is such a decision. (R. 97-109) (Feryl B.[3] v. Colvin, No. 16-1005-SAC (D. Kan. Dec. 29, 2016) (slip opinion). The issue in that case was whether the RFC findings in the prior administrative denial were supported by substantial evidence. (R. 101). In deciding that issue, the court considered and determined that the ALJ did not err in evaluating the medical opinions, id. at 101-06, and that the ALJ did not err in discounting the credibility of Plaintiff's allegations of symptoms. (R. 107-08). The issue of credibility decided in the previous case is identical to the issue of credibility in this case, but only for the period of August 29, 2014 and

---

[3] At the time of that decision of the district court, courts in the District of Kansas captioned Social Security cases using the Plaintiff's full last name. In this decision the court has altered the caption to include only the last initial. That decision is a part of the administrative record before the ALJ in the decision at issue here, and the rest of the court's citations to that decision will be to where it appears in the record in this case. (R. 97-109).

14

before. That action has been fully adjudicated on the merits, and a judgment was issued. (R. 110). The plaintiff in that case is Plaintiff in this case and had a full and fair opportunity to litigate the issue of credibility before August 30, 2014 in the earlier case.

With these facts and principles in mind, the court considers the ALJ's use of the court's earlier decision and of the administrative decision which was being reviewed in that case. In the decision under review here, the ALJ noted

> that the claimant made similar allegations that were adjudicated in a case decided by a previous Administrative Law Judge on August 29, 2014. (Exhibit B5A [(R. 74-88)]). This decision was upheld by the Appeals Counsel on November 6, 2015 (Exhibit B6A [(R. 89-93)]) and by the U.S. District Court for the District of Kansas on December 30, 2016. The claimant's date of alleged onset does not involve any particular change in medical issues, but corresponds to the date after the previous Administrative Law Judge decision. The previous decision is <u>res judicata</u> and any reference to evidence outside of the period of adjudication for the instant claim is for longitudinal assessment only.

(R. 12). He stated that migraine headaches

> were also addressed by the previous Administrative Law Judge decision in Exhibit B5A [(R. 74-88)], and the claimant's alleged onset of disability [here (August 30, 2014)] regarding her migraines in particular, does not correspond to any particular medical trauma or date of worsening in her condition, but is simply the earliest date of eligibility for a new claim after her previous decision.

(R. 15). When discussing his consideration of Plaintiff's allegations of disabling symptoms, he stated,

> While this is a <u>de novo</u> claim, time does not suddenly cause a drastic shift in functionality the next day, and so the previous decision is given some weight as a summation of the record the day before the claimant alleged she was disabled.

(R. 16).

15

The court finds no error in the ALJ's consideration of the earlier decision. He recognized that the issues of Plaintiff's RFC and credibility on August 29, 2014 and before were finally adjudicated and not subject to his consideration or change. He noted that although impairments may worsen over time, time alone does not produce drastic changes in functionality over the period of a single day and the record here does not show medical trauma or worsening of Plaintiff's migraine headaches on or around August 30, 2014. There is no error in this consideration and the ALJ properly relied upon it as one among many inconsistencies in the record and reasons to discount Plaintiff's allegation of disabling symptoms resulting from her migraine headaches.

The court finds two more issues worthy of mention in this decision. First, Plaintiff refers to a history of "uncontrolled migraine" (or migraines), or that her condition was "uncontrolled," several times in her Briefs. (Pl. Br. 4, 10, 11, 13) (Reply 2). However, the court found no reference in the medical records to uncontrolled pain or migraines. To the extent that Plaintiff never had an extended period where she had no migraine headaches, that is not the issue in a Social Security disability case. As the ALJ noted in his decision, the issue is Plaintiff's ability to function despite an impairment such as migraine headaches or a symptom such as pain. (R. 14) ("An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."), (R. 15) ("the focus of this case is the claimant's migraine headaches, and their alleged impact on her functioning that would cause her to be unable to do full-time work"), (R. 16, 17, 18).

Finally, the court finds the case of Pennington is not persuasive in the facts of this case. In Pennington, the ALJ found the claimant's allegation "credible 'only to the extent that it is reconciled with the objective medical evidence and the claimant's [residual functional capacity],'" and determined that he could return to his past relevant work and was not disabled. Pennington, 1997 WL 297684 *2. A divided court found that the ALJ's credibility determination was not supported by substantial evidence and remanded with instructions to remand to the Commissioner for an immediate award of benefits. Id. at *2, *5. Judge Brorby dissented, finding the "evidence amply supports the Administrative Law Judge's determination Mr. Pennington's testimony concerning the nature and severity of his disability was credible only to the extent it was supported by objective medical evidence. Id. at *7.

The decision in Pennington is distinguishable under the facts of this case. Here, the ALJ stated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (R. 16). That is what he did—as the court's discussion of his symptom evaluation demonstrates. The ALJ assessed limitations to a light exertion level and a prohibition from bright lights without darkened lenses which he noted "are additional limitations not found in the previous decision [and] are given based on the claimant's testimony and the objective medical record." (R. 17) (emphasis added). He acknowledged that Plaintiff "has some limitations in terms of triggers, which are supported by objective evidence." Id.

17

(emphasis added). While the ALJ did state, "There is little objective evidence to support much of the claimant's allegations of pain," in context, the statement is not error. The statement was made in light of Plaintiff's negative urinalysis in response to the allegation of drug seeking behavior:

> Thus, the record shows that even when the claimant is suffering from migraine headaches, her medical examinations are within normal limits. There is little objective evidence to support much of the claimant's allegations of pain. Her use of pain pills has caused analgesic rebound headaches in the past, and apparently at one point she ceased taking them altogether (although they continue to be prescribed) as the only objective evidence of testing in the record shows no evidence that her prescriptions were in her system.

(R. 18). Here, the ALJ clarified his reliance on little objective evidence of allegations of pain, and in context, and considering that this is but one of many inconsistencies used to discount Plaintiff's allegations, the court finds no error.

Plaintiff has shown no error in the ALJ's evaluation of her allegations of symptoms resulting from her migraine headaches. The ALJ explained his evaluation of Plaintiff's allegations and presented many inconsistencies and other reasons to discount the allegations. While the ALJ could have weighed the evidence differently, Plaintiff has not shown that the record evidence requires it.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 14, 2020, at Kansas City, Kansas.

<pre>                                  s:/ John W. Lungstrum                </pre>
**John W. Lungstrum**
**United States District Judge**